## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Orlando Division

**CHEYENNE HARRIS and ROBERT WHITAKER**, on behalf of themselves and all others similarly situated,

                                        **CASE NO.:**
                                        **DIVISION: ORLANDO**

                **Plaintiff,**

**v.**

**PROGRESS RESIDENTIAL MANAGEMENT SERVICES, LLC,**

                **Defendant.**

_____

## CLASS ACTION COMPLAINT

Plaintiffs, CHEYENNE HARRIS and ROBERT WHITAKER (hereinafter "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through his undersigned counsel, brings this class action against Defendant, Progress Residential Management Services, LLC (hereinafter "Progress Residential" or "Defendant") and alleges:

### I.    INTRODUCTION

1.    This class action arises from Progress Residential's unlawful taking of Security Deposits from its residential tenants. Specifically, Progress Residential (a) utilizes a form lease that violates Florida law; (b) prematurely takes tenant security deposits; (c) fails to provide tenants the statutorily required Notice of Intention to Impose a Claim on Security Deposit Letter ("Security Deposit Letter") in violation of

the Florida Residential Landlord Tenant Act ("FRLTA"), Fla. Stat. §83.40 et seq.; and (d) unlawfully takes the security deposit funds before they are due and seeks a setoff for amounts allegedly due over and above the security deposit in violation of the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.55 et seq.

## II.    JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because there are at least 100 Class members in the proposed Class, the combined claims of proposed Class members exceed $5,000,000, exclusive of interest and costs, and at least one Class member is a citizen of a state other than Defendant's state of citizenship. This Court also has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. §1367.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because Defendant resides in this District and most of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendant is subject to personal jurisdiction in this District.

## III.    PARTIES

4.      Plaintiff Cheyenne Harris is a natural person who resides in Tampa, Florida, is a Florida citizen and is a "consumer" as that term is defined by Fla. Stat. §559.55(8). Plaintiff has standing to bring a claim under the FCCPA because she was directly affected by violations of these Acts and had money taken from her in the form of a security deposit in connection with Progress Residential's illegal and improper debt collection activities.

2

5.      Plaintiff Robert Whitaker is a natural person who resides in Tampa, Florida, is a Florida Citizen and is a "consumer" as that term is defined by Fla. Stat. §559.55(8). Plaintiff has standing to bring a claim under the FCCPA because he was directly affected by violations of these Acts and had money taken from him in the form of a security deposit in connection with Progress Residential's illegal and improper debt collection activities.

6.      Plaintiffs, at all material times herein, were each a "tenant" pursuant to Fla. Stat. §83.43(4). "Tenant" means any person entitled to occupy a dwelling unit under a rental agreement, pursuant to the FRLTA.

7.      Defendant Progress Residential Management Services, LLC, is a Florida limited liability company, whose principal address is 750 S. North Lake Blvd., Suite 1000, Altamonte Springs, FL 32701. Progress Residential conducts business in this District and other Districts in Florida.

8.      Upon information and belief, Progress Residential Management Services, LLC's members are citizens of the state of Georgia.

## IV.    FACTUAL ALLEGATIONS

### A.    Background on Progress Residential

9.      Progress Residential is the management subsidiary of the $51 billion investment firm, Pretium Partners, LLC. Pretium Partners owns more than 80,000 single family homes.

10.     Pretium Partners forms smaller companies that are then funded and used to purchase and hold single-family homes. The names of the entities correspond to

when the homes were purchased and they act as holding companies. For example, it uses names such as "Progress Residential 2014-1 Borrower, LLC," "Progress Residential 2015-2 Borrower, LLC," and "Progress Residential Borrower 19, LLC" (all the various Progress Residential Borrower entities are referred to as "Progress Borrower"). On information and belief, none of these holding companies have any employees.

11.    Pretium Partners created Progress Residential to manage its properties and by doing so created one of the largest property management companies in the United States. Each holding company executes a common management agreement with Progress Residential to manage all aspect of the rental business for Pretium Partners.

12.    Progress Residential provides management, maintenance, leasing, security deposit administration, and billing services for the thousands of residential properties that it manages for Pretium Partners. Thus, Progress Residential's entire portfolio of managed properties are private equity owned single family homes located across Florida.

13.    Progress Residential handles new tenant leasing and utilizes a standard form lease agreement for all its Florida properties. (**Exhibit A**, Plaintiffs "Lease"). A Progress Residential employee signs all lease agreements with new tenants on behalf of the landlord. (Exhibit A, p. 20).

14.    Progress Residential collects and is responsible for the administration and return its tenant's security deposits at all properties it manages in Florida.

4

15.     After a tenant moves out, Fla. Stat. §83.49(3)(a) requires Progress Residential to either return the security deposit in full to a tenant within 15 days of moveout, or it can send a certified mail notice of its intent to impose a claim against a tenant's security deposit that includes the statutory language required by Fla. Stat. §83.49(3)(a) within 30 days of move out ("Security Deposit Letter"):

16.     However, when Progress Residential seeks to impose a claim upon a tenant's security deposit, Progress Residential fails to send a Security Deposit Letter that complies with Fla. Stat. §83.49(3)(a).

17.     Instead, Progress Residential merely updates the tenant's online ledger ("Tenant Ledger") to reflect that Progress Residential has already illegally taken possession of the tenants' security deposit, failed to explain the reasons for asserting a claim against the security deposit funds and fails to provide any objection period for the tenant to challenge the amounts deducted.

18.     After illegally withholding a tenant's security deposit, Progress Residential's in-house dispute team, (identified by the email address pastresidentdisputes@rentprogress.com), sends a written email communication to the former tenant demanding additional amounts due above the illegally withheld security deposit. In each email communication, Progress Residential sends its demand using the following language: "Please be informed that you currently owe us Balance of $XX.XX, please note that you are requested to pay this balance at the earliest to stay away from your account being moved to Collections." (the "Collections Communication").

19.     Upon information and belief, Progress Residential's routine practice is to immediately take possession and control over tenant security deposits and to issue Tenant Ledgers to all tenants in Florida within a few days of move out.

**B. The Florida Residential Landlord Tenant Act ("FRLTA") Governs Security Deposits Procedures.**

20.     The FRLTA requires strict compliance regarding residential leases that require security deposits.  The Act contains requirements for disclosures in the lease and procedures that must be followed before a claim can be made against the security deposit funds.    Fla. Stat. § 83.49(2) of the FRLTA governs lease disclosure requirements and states:

> (2) The landlord shall, in the lease agreement or within 30 days after receipt of advance rent or a security deposit, give written notice to the tenant which includes disclosure of the advance rent or security deposit. . .  The written notice must:
>
> (a) Be given in person or by mail to the tenant.
>
> (b) State the name and address of the depository where the advance rent or security deposit is being held or state that the landlord has posted a surety bond as provided by law.
>
> (c) State whether the tenant is entitled to interest on the deposit.
>
> (d) Contain the following disclosure:
>
> YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOU NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO

> IMPOSE A CLAIM AGAINST THE DEPOSIT. IF YOU DO NOT
> REPLY TO THE LANDLORD STATING YOUR OBJECTION TO
> THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE
> LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE
> CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF
> ANY.
> IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE,
> THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY
> LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF
> YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD
> MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER
> FILE A LAWSUIT CLAIMING A REFUND.
> YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY
> DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE
> PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL
> BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY
> THE LOSING PARTY.
> THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II OF
> CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR
> LEGAL RIGHTS AND OBLIGATIONS.

Fla. Stat. § 83.49(2) (the "Security Deposit Lease Language").

21.     Progress Residential's standard form Lease violates the Landlord Tenant Act because it fails to include the above required disclosure language regarding security deposits or any of the other required terms.

22.     The FRLTA also includes specific provisions for how claims are to be made against a tenant's security deposit. Fla. Stat. §83.49(3)(a) of the FRLTA further states:

> (a)    Upon the vacating of the premises for termination of the lease, if the landlord does not intend to impose a claim on the security deposit, the landlord shall have 15 days to return the security deposit together with interest if otherwise required, or the landlord shall have 30 days to give the tenant written notice by certified mail to the tenant's last known mailing address of his or her intention to impose a claim on the deposit and the reason for imposing the claim. The notice shall contain a statement in substantially the following form:

> This is a notice of my intention to impose a claim for damages in the amount of _____ upon your security deposit, due to _____. It is sent to you as required by s. 83.49(3), Florida Statutes. You are hereby notified that you must object in writing to this deduction from your security deposit within 15 days from the time you receive this notice or I will be authorized to deduct my claim from your security deposit. Your objection must be sent to (landlord's address) .

If the landlord fails to give the required notice within the 30-day period, he or she forfeits the right to impose a claim upon the security deposit and may not seek a setoff against the deposit but may file an action for damages after return of the deposit.

23.     The landlord cannot apply the security deposit monies towards an outstanding balance in the Security Deposit Letter because at the time the letter is sent, the landlord has no legal right to those funds:

> (b)   Unless the tenant objects to the imposition of the landlord's claim or the amount thereof within 15 days after receipt of the landlord's notice of intention to impose a claim, **the landlord may then deduct the amount of his or her claim and shall remit the balance of the deposit to the tenant within 30 days after the date of the notice of intention to impose a claim for damages.** The failure of the tenant to make a timely objection does not waive any rights of the tenant to seek damages in a separate action.

Fla. Stat. § 83.49(3)(b)(emphasis added)

24.     The Florida legislature also added Fla. Stat. § 83.49(1)(a) to the FRLTA which prevents landlords from prematurely taking possession of security deposits:

> The landlord shall not comingle such moneys with any other funds of the landlord or hypothecate, pledge, or in any other way make use of such moneys **until** such moneys are actually due the landlord.

Fla. Stat. § 83.49(1)(a) (Emphasis added).

8

25.     Progress Residential routinely violates Fla. Stat. §83.49(3)(a) of the Landlord Tenant Act in four ways:  (1) it fails to send a Security Deposit Letter via certified mail, (2) it fails to send a complaint Security Deposit Letter at all, (3) it fails to provide the tenant with 15 day  to object to its claims against their security deposit before taking possession and control of the Deposit, and (4) it fails to return the security deposit if an objection is received.

26.     Additionally, the Tenant Ledger shows that Progress Residential routinely takes possession and control of tenant security deposit funds upon move out and well before the 15-day objection period had expired in violation of the FRLTA.

27.     Thus, to date, Progress Residential had no legal right to collect and hold any security deposits at all because its lease failed to include the statutorily required information and disclosure language.  Additionally, Progress Residential routinely fails to send any legally sufficient Security Deposit Letter to its tenants before taking possession of the tenant's security deposit in violation of Fla. Stat. §83.49(3)(a).  As a result of not providing required Security Deposit Lease Language and not providing the Security Deposit Letter, the landlord "forfeits the right to impose a claim upon the security deposit and may not seek a setoff against the deposit." *Id.*

28.     Plaintiffs on behalf of themselves and the Class seek a return of all security deposits in full as a result of the numerous FRLTA violations, and statutory and actual damages under the Florida Consumer Collection Practices Act ("FCCPA")

for asserting a legal right to tenant security deposits when that right does not exist, and damages for breach of the Lease.

**C. Plaintiffs' Facts**

29.    On December 14, 2022, Plaintiffs entered a standard form "Residential Lease" with a landlord identified in the Lease as "Progress Residential Borrower 23, LLC," for a property located at 14620 Kristenright Lane Orlando, Florida 32826 (the "Property"). The term of the Lease was from January 17, 2023 through January 16, 2024. (Exhibit A).

30.    The Lease declares that Progress Residential is the Manager of the Property and states that the manager "is authorized to receive notices and demands on the landlord's behalf." (Exhibit A, p. 2). Progress Residential employee, Vicky Espiasse, signed the Lease binding Progress Residential as Property Manager and the landlord as the owner of the property in Plaintiffs Lease.

31.    Upon information and belief, the Lease is a standard form that Progress Residential utilizes with all its Florida tenants.

32.    The Progress Residential Lease does not contain the Security Deposit Lease Language or any of the other deposit information required by Fla. Stat. § 83.49(2) of the FRLTA.

33.    Progress Residential collects the tenant security deposits at the beginning of the lease term and administers any claims against tenant security deposits at all properties it manages in Florida.

34.     Prior to moving in, Plaintiffs paid Progress Residential a Security Deposit of $1,845.00. Exhibit A, p. 1.

35.     Plaintiffs complied with all Lease obligations during their tenancy.

36.     On or about November 13, 2023, Plaintiffs provided Progress Residential notice that Plaintiffs were going to move out, 63 days later, on the last day of the Lease, January 16, 2024.  The Lease only requires a 60-day notice, and Plaintiffs fully complied with her notice requirement.

37.     On November 13, 2023, Progress Residential confirmed receipt of Plaintiffs notice that they were going to vacate at the end of the Lease term by sending a confirmation email.

38.     Pursuant to the term stated in the Lease and Progress Residential's written confirmation of receiving Plaintiffs' notice, Plaintiffs moved out of the Property on January 16, 2024.

39.     Paragraph 6.2 of the Lease lists deductions and other charges that can be made against the Security Deposit.0 (Exhibit A, p. 5–6).  These deductions are subject to the FRLTA Security Deposit Letter requirements before they can be deducted.

40.     Despite Plaintiffs complying with the terms of the Lease, Progress Residential updated Plaintiffs Tenant Ledger on the same day Plaintiffs moved out, January 16, 2024, with the following illegal and premature deductions from Plaintiffs' security deposit:



41.     Despite asserting claims for "Damage- Paint," "Insufficient Notice," and "Insufficient cleaning" totaling $2,730.20, Progress Residential failed to send Plaintiffs a compliant Security Deposit Letter indicating their intent to impose claims upon Plaintiffs security deposit and failed to provide Plaintiffs with the required 15 days to object to such claims.

42.     On information and belief, Progress Residential does not send any letter including the required statutory language and does not provide any tenant 15 days to object before taking possession and control of the security deposit funds for any

properties it manages in Florida. Instead, it uses its online Tenant Ledger to seek payments from its tenants.

43.     Plaintiff's Tenant Ledger shows that on January 16, 2024, Progress Residential illegally took possession and control of Plaintiffs' security deposit and applied those funds to amounts Progress Residential was seeking to collect from Plaintiffs without providing Plaintiffs with an opportunity to object to those charges in violation of the FRLTA. Progress Residential has this uniform practice for all properties in manages in Florida of taking these funds for its own use before the 15-day notice period of Chapter 83 has expired.

44.     Plaintiffs' Tenant Ledger also reflects various amounts allegedly owed in addition to the security deposit.

45.     Because Plaintiffs received no communications from Progress Residential related to the return of their security deposit, on February 27, 2024, more than 30-days after moveout, Plaintiff Harris wrote an email to Progress Residential disputing the late notice charge and demanding return of Plaintiffs' security deposit.

46.     On March 4, 2024, Progress Residential replied and offered to remove the "insufficient notice fee" if Plaintiffs agreed to execute a full release and pay Progress Residential the sum of $1,680.20.

47.     The same day, Plaintiff Harris declined and, again, demanded return of the security deposit in full, this time citing to the FRLTA requirement to return a security deposit if a tenant objects to the landlord's claims.

48.    On March 6, 2024, Progress Residential offered to reduce its claim against Plaintiffs to $644.73, if Plaintiffs made an immediate payment.  At that time, the Tenant Ledger was upgraded as follows:



49.    Each of these premature deductions from Plaintiffs' security deposit violated the FRLTA because the funds were taken before any Security Deposit Letter was provided.

50.    On March 7, 2024, Progress Residential sent Plaintiffs the following demand for payment via email:

> Please be informed that you currently owe us Balance of $644.73,(sic) Please note that you are requested to pay this

balance at the earliest to stay away from your account being
moved to Collections.

A copy of Progress Residential's March 7, 2024 Collections Communication is
attached as **Exhibit B**.

51. Thus, Progress Residential knowingly sent its collections
communications and sought to setoff amounts due from the security deposit funds and
to collect the amounts of $1,485.47, $1,680.20, and $644.73 in excess of the security
deposit from Plaintiffs when Progress Residential did not have a right to those monies
because it did not comply with Fla. Stat. § 83.49(3)(a) and (b) notice and objection
requirements.  It could only seek to collect such amounts after returning the security
deposit in full.

52. Upon information and belief, it is Progress Residential' routine business
practice to unlawfully claim/deduct/take ownership of tenants' security deposits
before the Fla. Stat. § 83.49(3)(b) 15-day objection period expires for all its tenants at
all their Florida rental homes.

## V.    CLASS REPRESENTATION ALLEGATIONS

53. Plaintiffs brings this action as a class action pursuant to Rule 23 (b)(2)
and (b)(3), of the Federal Rules of Civil Procedure on behalf of themselves and all
others similarly situated as members of the Class listed below:

**SECURITY DEPOSIT CLASS:** All persons in the State of Florida who paid a
Security Deposit to Progress Residential pursuant to a Lease Agreement in
substantially the form of Exhibit A during the Class Period.

Collectively the "Class."

54.     The Class Period for the Class begins four years prior to the filing of the original Complaint in this matter and ends when this Court issues an Order approving Class Notice.

55.     Plaintiffs brings this action as a class action pursuant to Rule 23 (b)(2) and (b)(3), of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated as members of the Class listed below:

> **NOTICE CLASS:** All persons in the State of Florida who had any portion of their security deposit retained without receiving a Security Deposit Letter.

Collectively the "Notice Class."

56.     The Class Period for the Class begins four years prior to the filing of the original Complaint in this matter and ends when this Court issues an Order approving Class Notice.

57.     Plaintiffs brings this action as a class action pursuant to Rule 23 (b)(2) and (b)(3), of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated as members of the Class listed below:

> **COLLECTIONS CLASS:** All persons in the State of Florida who received a Tenant Ledger and/or a Collections Communication in substantially the same form as Exhibit B, from Progress Residential and had any portion of their security deposit subsequently retained and/or any amount above their security deposit demanded.

Collectively the "FCCPA Sub-class."

58.     The Class Period for the FCCPA Class begins two years prior to the filing of the original Complaint in this matter and ends when this Court issues an Order approving Class Notice.

59.    Plaintiffs are unable to state the exact number of members of the Class, the Notice Class, and the FCCPA Sub-class because that information is solely in the possession of Progress Residential.  However, the exact number of class members, including the names and addresses of all class members, will be easily ascertained through a review of Defendant's business records.  The putative Class and FCCPA Sub-class individually includes many Florida tenants due to the number of properties that Progress Residential operates and manages within the state.

60.    Progress Residential utilizes the same standard form Lease, Tenant Ledger, and Collections Communication in connection with its collection efforts for security deposit withholdings and routinely fails to provide a Security Deposit Letter including its notice to impose a claim on security deposits in compliance with the FRLTA. Therefore, the putative Class, Notice Class, and FCCPA Sub-class is so numerous that joinder of all members would be impracticable.

61.    Questions of law and fact common to the Plaintiff Class exist and predominate over questions affecting only individual members.  Specifically, the predominating common questions include:

a.  Whether Defendant is precluded from collecting security deposits from any tenant under Defendant's Lease because the Lease fails to include the security deposit notice language required by FRLTA § 83.49(2);

b.  Whether Defendant violated the FRLTA by not providing Security Deposit Notice Letters to tenants which include the statutory language required by FRLTA § 83.49(3)(a);

c.  Whether Defendant's act of taking possession and control over tenant Security Deposits prior to expiration of the 15 Day Objection period violates the FRLTA § 83.49(3)(b);

d.  Whether Defendant's attempt to seek a setoff against tenant security deposits through its Collection Letter without first providing a Notice Letter in compliance with FRLTA § 83.49(3) and failing to wait for the 15-day objection period to expire before taking possession of those amounts, makes its collection efforts unlawful in violation of FCCPA § 559.72(9);

e.  Whether paragraph 21 of Defendant's Lease is void and unenforceable pursuant to FRLTA § 83.47 because it purports to waive the tenant's right to a civil action provided under FRLTA § 83.54, and it purports to waive the tenant's right to attorney fees that are provided under FRLTA § 83.48; and

f.  Whether the members of the Class have sustained damages, and if so, the proper measure of damages, including actual and statutory.

62.  The claims asserted by the named Plaintiffs in this action are typical of the claims of the members of the Class, Notice Class, and FCCPA Sub-class because, upon information and belief, Progress Residential use standardized form documents and policies when asserting claims against tenant Security Deposits and when attempting to collect debts from Florida tenants after move out.

18

63.     The claims of Plaintiffs and of the Class, Notice Class, and FCCPA Sub-class originate from the same conduct, practice, and procedure, on the part of Progress Residential.  Plaintiffs possess the same interests and has suffered the same injuries as each putative class member.

64.     The named Plaintiffs will fairly and adequately represent and protect the interest of the members of the Plaintiff Class because they have no interest antagonistic to the Class, Notice Class, and FCCPA Sub-class they seek to represent, and because the adjudication of their claims will necessarily decide the identical issues for other class members.  Whether the Defendants' practice of failing to provide proper notice of its intent to assert a claim against the security deposits of Plaintiff and the class violates the FRLTA and/or FCCPA are common issues that will be decided for all other consumers with similar or identical move out packets and collection letters. There is nothing peculiar about Plaintiffs situation that would make them inadequate as a Class Representatives.   Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation.

65.     A class action is superior to other methods for the fair and efficient adjudication of this controversy because the damages suffered by each individual Class member will be relatively modest, compared to the expense and burden of individual litigation.   It would be impracticable for each Class member to seek redress individually for the wrongful conduct alleged herein because the cost of such individual litigation would be cost prohibitive as individual statutory damages for each violation are capped at $1,000.00 under the FCCPA.  It would be difficult, if not

impossible, to obtain counsel to represent Plaintiffs on an individual basis for such small claims. In addition, if the consumer were to utilize the Florida Residential Landlord Tenant Act, Fla. Stat. § 83.49(3)(b) to get the Security Deposit back, the same issues would arise, including the need to pay for an attorney and the cost of filing suit and serving Progress Residential. This is why both the FRLTA and the FCCPA provide for attorney fees to the prevailing Plaintiff.

66.     More importantly, the vast majority of the Class, Notice Class, and FCCPA Sub-class members are not aware the Defendant's policies violate the FCCPA and the FRLTA and a class action is the only viable means of adjudicating their rights. There will be no difficulty in the management of this litigation as a class action as the legal issues affect a standardized pattern of conduct by Defendant and class actions are commonly used in such circumstances and Progress Residential has the records necessary to determine class membership and damages.

<u>**COUNT I:**</u>
**VIOLATION OF THE FLORIDA RESIDENTIAL LANDLORD AND TENANT ACT, FLA. STAT. §§ 83.49(2), 83.47 ("FRLTA")**
**On behalf of the Class**

67.     Plaintiffs, on behalf of themselves, and all others similarly situated, repeat and re-allege paragraphs 1 through 66 as if fully set forth herein.

68.     As residential owners and managers, the relationship between Progress Residential and their tenants is governed by the Florida Residential Landlord Tenant Act, Fla. Stat. Chapter 83 et seq. ("FRLTA").

69.     Fla. Stat. § 83.44 states that every rental agreement imposes an obligation of good faith in the performance thereof by the landlord or manager.

70.     Fla. Stat. § 83.49(2) requires landlords to include the following language in its lease agreement when a security deposit is required:

> YOUR LEASE REQUIRES PAYMENT OF CERTAIN DEPOSITS. THE LANDLORD MAY TRANSFER ADVANCE RENTS TO THE LANDLORD'S ACCOUNT AS THEY ARE DUE AND WITHOUT NOTICE. WHEN YOU MOVE OUT, YOU MUST GIVE THE LANDLORD YOUR NEW ADDRESS SO THAT THE LANDLORD CAN SEND YOU NOTICES REGARDING YOUR DEPOSIT. THE LANDLORD MUST MAIL YOU NOTICE, WITHIN 30 DAYS AFTER YOU MOVE OUT, OF THE LANDLORD'S INTENT TO IMPOSE A CLAIM AGAINST THE DEPOSIT. IF YOU DO NOT REPLY TO THE LANDLORD STATING YOUR OBJECTION TO THE CLAIM WITHIN 15 DAYS AFTER RECEIPT OF THE LANDLORD'S NOTICE, THE LANDLORD WILL COLLECT THE CLAIM AND MUST MAIL YOU THE REMAINING DEPOSIT, IF ANY.
>
> IF THE LANDLORD FAILS TO TIMELY MAIL YOU NOTICE, THE LANDLORD MUST RETURN THE DEPOSIT BUT MAY LATER FILE A LAWSUIT AGAINST YOU FOR DAMAGES. IF YOU FAIL TO TIMELY OBJECT TO A CLAIM, THE LANDLORD MAY COLLECT FROM THE DEPOSIT, BUT YOU MAY LATER FILE A LAWSUIT CLAIMING A REFUND.
>
> YOU SHOULD ATTEMPT TO INFORMALLY RESOLVE ANY DISPUTE BEFORE FILING A LAWSUIT. GENERALLY, THE PARTY IN WHOSE FAVOR A JUDGMENT IS RENDERED WILL BE AWARDED COSTS AND ATTORNEY FEES PAYABLE BY THE LOSING PARTY.
>
> THIS DISCLOSURE IS BASIC. PLEASE REFER TO PART II OF CHAPTER 83, FLORIDA STATUTES, TO DETERMINE YOUR LEGAL RIGHTS AND OBLIGATIONS.

71.    The security deposit section of Progress Residential's Lease fails to include the required disclosure language. (Exhibit A, p. 5–6).

72.    Fla. Stat. § 83.47 makes any such provision void and unenforceable as follows:

> (1) A provision in a rental agreement is void and unenforceable to the extent that it:
>
>> (a) Purports to waive or preclude the rights, remedies, or requirements set forth in this part.
>>
>> (b) Purports to limit or preclude any liability of the landlord to the tenant or of the tenant to the landlord, arising under law.
>
> (2) If such a void and unenforceable provision is included in a rental agreement entered into, extended, or renewed after the effective date of this part and either party suffers actual damages as a result of the inclusion, the aggrieved party may recover those damages sustained after the effective date of this part.

73.    Because Progress Residential failed to include the required disclosure language in its Lease, as is required by the FRLTA, Progress Residential's security deposit provision in its Lease is void and unenforceable.

74.    Plaintiffs' and all tenant class members have suffered damages to the extent they paid a security deposit pursuant to a void Lease provision.

75.    Fla. Stat. § 83.48 gives Plaintiffs and the Class the right to recover reasonable attorney's fees and court costs:

> In any civil action brought to enforce the provisions of the rental agreement or this part, the party in whose favor a judgment or decree has been rendered may recover reasonable attorney fees and court costs from the nonprevailing party. The right to attorney fees in this section may not be waived in a lease agreement.

(emphasis added).

**COUNT II**
**VIOLATION OF THE FLORIDA RESIDENTIAL LANDLORD AND**
**TENANT ACT, FLA. STAT. § 83.47 ("FRLTA")**
**On behalf of the Class**

76.    Plaintiffs, on behalf of themselves, and all others similarly situated,

repeat and re-allege paragraphs 1 through 66 as if fully set forth herein.

77.    Fla. Stat. § 83.54 gives Plaintiffs and the Class the ability to enforce their

rights pursuant to the FRLTA by "civil action":

> **83.54 Enforcement of rights and duties; civil action; criminal offenses.** Any right or duty declared in this part is enforceable by civil action. A right or duty enforced by civil action under this section does not preclude prosecution for a criminal offense related to the lease or leased property.

78.    Fla. Stat. § 83.55 gives Plaintiffs and the Class the right to recover their

damages caused by a violation of the FRLTA:

> **83.55   Right of action for damages.** If either the landlord or the tenant fails to comply with the requirements of the rental agreement or this part, the aggrieved party may recover the damages caused by the noncompliance.

79.    Fla. Stat. § 83.48 gives Plaintiffs and the Class the right to recover

reasonable attorney's fees and court costs:

> **83.48 Attorney Fees.** In any civil action brought to enforce the provisions of the rental agreement or this part, the party

23

in whose favor a judgment or decree has been rendered may recover reasonable attorney fees and court costs from the nonprevailing party. The right to attorney fees in this section may not be waived in a lease agreement.

80.    Fla. Stat. § 83.47 makes any Lease provision void and unenforceable if they purport to take away any rights provided by the FRLTA:

> (1)   A provision in a rental agreement is void and unenforceable to the extent that it:
>
>> (a)   Purports to waive or preclude the rights, remedies, or requirements set forth in this part.
>>
>> (b)   Purports to limit or preclude any liability of the landlord to the tenant or of the tenant to the landlord, arising under law.
>
> (2)   If such a void and unenforceable provision is included in a rental agreement entered into, extended, or renewed after the effective date of this part and either party suffers actual damages as a result of the inclusion, the aggrieved party may recover those damages sustained after the effective date of this part.

81.    Paragraph 21 of Progress Residential's Lease includes the following provision:

> 21.MEDIATION/WAIVER OF JURY TRIAL: Resident agrees to mediate with Landlord any dispute or claim arising between them out of this Lease, or any resulting transaction, before resorting to court action. Mediation fees, if any, will be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, Resident commences an action without first attempting to resolve the matter through mediation or refuses to mediate after a request has been made, then Resident will not be entitled to recover attorney fees, even if they would otherwise be available to Resident in any such action. Each of the parties hereby irrevocably waives any right to trial by jury.

24

82.     Because Progress Residential's Lease purports to waive or limit Plaintiffs and the class's right to pursue a civil action (Fla. Stat. § 83.54), and seek damages (Fla. Stat. § 83.55), including attorney's fees and costs (Fla. Stat. § 83.48), Progress Residential's mediation provision in its Lease is void and unenforceable. Fla. Stat. § 83.47.

83.     Plaintiffs seek a declaratory judgment that the mediation provision in their Lease is void and an order enjoining enforcement of the mediation provision in Progress Residential's Lease, requiring Plaintiffs or any class members to mediate before filing suit and eliminating their right to attorney fees and/or damages for failure to mediate.

## COUNT III
## VIOLATION OF THE FLORIDA RESIDENTIAL LANDLORD AND TENANT ACT, FLA. STAT. § 83.40 *et seq.* ("FRLTA")
## On behalf of the Notice Class

84.     Plaintiffs, on behalf of themselves, and all others similarly situated, repeat and re-allege paragraphs 1 through 66 as if fully set forth herein.

85.     After a tenant moves out, Fla. Stat. § 83.49(3)(a) requires landlords to either return the deposit in full within 15 days of moveout or send a certified mail notice of intent to impose a claim against a tenant's security deposit within 30 days of move out:

> (a)   Upon the vacating of the premises for termination of the lease, if the landlord does not intend to impose a claim on the security deposit, the landlord shall have 15 days to return the security deposit together with interest if otherwise required, or the landlord shall have 30 days to give the

tenant written notice by certified mail to the tenant's last known mailing address of his or her intention to impose a claim on the deposit and the reason for imposing the claim. The notice shall contain a statement in substantially the following form:

> This is a notice of my intention to impose a claim for damages in the amount of upon your security deposit, due to . It is sent to you as required by s. 83.49(3), Florida Statutes. You are hereby notified that you must object in writing to this deduction from your security deposit within 15 days from the time you receive this notice or I will be authorized to deduct my claim from your security deposit. Your objection must be sent to _(landlord's address)_.

86.    The FRLTA is clear and unambiguous regarding the penalty for the landlord's noncompliance with the Security Deposit Letter requirement:

> If the landlord fails to give the required notice within the 30-day period, he or she forfeits the right to impose a claim upon the Security Deposit and may not seek a setoff against the deposit but may file an action for damages **after return of the deposit**.

Fla. Stat. § 83.49(3) (emphasis added).

87.    When a tenant receives a Security Deposit Notice Letter within 30 days of move out, Fla. Stat. § 83.49(3)(b) provides the tenant 15 days to object to the claims made against their security deposit. If the tenant does not object to the claim, under Fla. Stat. §83.49(3)(b), then and only then can the landlord take possession of the tenant's security deposit monies.  In other words, the landlord cannot apply the security deposit monies towards an outstanding balance in the Security Deposit Letter

at all until after a compliant Notice Letter has been provided and the 15-day objection period has expired.  The FRLTA clarifies this point as follows:

> (b)  Unless the tenant objects to the imposition of the landlord's claim or the amount thereof within 15 days after receipt of the landlord's notice of intention to impose a claim, **the landlord may then deduct the amount of his or her claim and shall remit the balance of the deposit to the tenant within 30 days after the date of the notice of intention to impose a claim for damages.** The failure of the tenant to make a timely objection does not waive any rights of the tenant to seek damages in a separate action.

Fla. Stat. 83.49(3)(b)(emphasis added).

88.    The Florida legislature added another section to the FRLTA that prevents landlords from prematurely taking possession of tenants' security deposits to offset security deposit claims, Fla. Stat. § 83.49(1)(a) states that:

> The landlord shall not comingle such moneys with any other funds of the landlord or hypothecate, pledge, or in any other way make use of such moneys **until** such moneys are actually due the landlord.

(emphasis added).

89.    Progress Residential took control and possession of Plaintiffs' and Class Members' security deposits prior to sending a compliant Security Deposit Letter pursuant to Fla. Stat. § 83.49(3)(b), and prior to waiting for the 15-day objection period to expire. Fla. Stat. § 83.49(3)(b) is clear that security deposit monies are not due to a landlord until after the 15-day objection period has lapsed without any objection from the tenant.

90.    Here, the 15-day objection period never even began to run because Progress Residential failed to send a legally sufficient Security Deposit Letter at all. Even if it had, Progress Residential unlawfully took possession and control over the security deposits of all tenants on the same day they moved out, which is well before any notice letter was sent and before the 15-day objection period could have run.

91.    By doing so Progress Residential also made use of Plaintiff's and Class Members monies before the use of such monies was actually due in violation of Fla. Stat. § 83.49(1)(a).

92.    Therefore, Progress Residential violated Fla. Stat. § 83.49(3)(b) and Fla. Stat. § 83.49(1)(a) by taking the tenant security deposits prematurely.

93.    Plaintiff and Class Members suffered actual damages by Progress Residential equal to the amount of any security deposits withheld, plus interest.

94.    In accordance with Fla. Stat. § 83.48, Plaintiff and the Class are entitled to attorney's fees and costs.

### COUNT IV
### VIOLATION OF THE FLORIDA CONSUMER
### COLLECTION PRACTICES ACT, FLA. STAT. § 559.55 *et seq*. ("FCCPA")
### On Behalf of the FCCPA Sub-class

95.    Plaintiffs, on behalf of themselves and all others similarly situated in the FCCPA Sub-class, repeats and re-alleges each and every allegation contained in paragraphs 1 through 66 above as if fully set forth herein.

96.     In recognition of abusive, deceptive, and unfair practices by those that collect debts, the Florida legislature passed Fla. Stat. §§ 559.55 – 559.785, known as the Florida Consumer Collections Practices Act ("FCCPA").

97.     The FCCPA defines "Debt" or "consumer debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55.

98.     For purposes of the FCCPA, monies allegedly due, over and above a security deposit, for alleged damage to an apartment are considered a "debt." *Jonquinta Edwards v. New Three Seasons, LTD d/b/a Three Seasons Mobile Home Village*, Case No. 2019-SC-3609 (Fla. 4th Jud. Cir. Nov. 6, 2019).

99.     "Debt collector" means any person who uses any instrumentality of commerce within this state, whether initiated from within or outside this state, in any business the principal purpose of which is the collection of debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

100.    For purposes of the FCCPA, when Progress Residential engages in the practice of collecting debts, including damages related to the properties that it manages, its collections practices are governed by the FCCPA. *Jonquinta Edwards v. New Three Seasons, LTD d/b/a Three Seasons Mobile Home Village*, Case No. 2019-SC-

3609 (Fla. 4th Jud. Cir. Nov. 6, 2019) (granting a plaintiff summary judgment under the FCCPA for a landlord's debt collections practice in violation of the FRLTA).

101.    At all times material herein, Plaintiff and the FCCPA Sub-class members were "debtors" or "consumers" as defined by Fla. Stat. § 559.55(8).

102.    At all times material herein, the amounts allegedly due to be paid to Progress Residential in connection with their Leases, and as set forth on the Tenant Ledger or in collection correspondence after move out were "debts" or "consumer debts" as defined by Fla. Stat. § 559.55(6).

103.    At all times material herein, Progress Residential was a "person" as referred to under Fla. Stat. § 559.72.

104.    Among the FCCPA's enumerated prohibitions, Fla. Stat. §559.72(9) states that "no person shall"… "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, **or assert the existence of some other legal right when such person knows that the right does not exist**." Fla. Stat. §559.72(9)(emphasis added).

105.    The FRLTA states:

> If the landlord fails to give the required notice within the 30-day period, **he or she forfeits the right to impose a claim upon the Security Deposit and may not seek a setoff against the deposit but may file an action for damages after return of the deposit."** Fla. Stat. § 83.49(3)(a).

106.    Accordingly, the FRLTA only allows for the landlord to "seek a setoff against the [security] deposit" if a compliant Security Deposit Letter was issues and the 15-day objection period expired without objection by the tenant.

107.    Here, Progress Residential's systematic policy is to not provide the required Security Deposit Letter explaining its intent to impose a claim against the security deposit before taking possession of the security deposit funds.  Instead of explaining that it intended to impose a claim against the Security Deposit IF no objection was filed within 15 days of receipt of the notice letter, Progress Residential first takes possession and control of the security deposit on the date of Plaintiffs and Class Members move out and fails to send the statutorily required language and providing the tenant 15 days to object.

108.    Defendant's practice of deducting claims from the security deposit or completely withholding the deposits without first providing a compliant notice letter under Fla. Stat. §83.49(3)(a) violates the FCCPA, Fla. Stat. §559.72(9) as it asserts a legal right that Progress Residential did not have. *Jonquinta Edwards v. New Three Seasons, LTD d/b/a Three Seasons Mobile Home Village*, Case No. 2019-SC-3609 (Fla. 4th Jud. Cir. Nov. 6, 2019) (holding that withholding a tenant's security deposit without complying with the notice requirements of the FRLTA is a violation of the FCCPA).

109.    Furthermore, § 83.49(3)(a) provides that Progress Residential cannot "seek a setoff against the deposit" if the required notice is not provided.  Thus, it unlawfully seeks a setoff against the security deposit of Plaintiffs and the class as it deducts from the total amount due the amount of the security deposit before it had any legal right to those funds.  As a result, Progress Residential's subsequent Collection Communications asserts a legal right that Progress Residential did not have because

31

at the time the Collection Communication was sent, a compliance Security Deposit Letter had not been given and the 15-day objection period had not expired.

110.    Defendant had full knowledge of the FRLTA as a property management company that handles security deposits tens of thousands of single family homes in Florida and cannot claim ignorance of the law. It had no right under the law to impose its claims on Security Deposits and collected those funds anyway.

111.    The FCCPA is a strict liability statute and therefore, Defendant should be held liable from its policy of collecting deposits without proper notice.

112.    As a direct and proximate result of Defendant's FCCPA violation, Plaintiffs and the FCCPA Class suffered actual damages in the form of (1) security deposits withheld by Defendant; (2) amounts paid to Progress Residential after sending a Collection Letter in the form of Exhibit B; and statutory interest on such amounts.

113.    Plaintiffs and the Class are also entitled to statutory damages of $1,000 per class member and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter an Order:

a.    Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative, and appointing the undersigned as Class Counsel;

b.      Adjudging that Progress Residential violated the FRLTA, the FCCPA, and breached the Lease and awarding Plaintiff and Class members actual damages in the Security Deposit amounts collected or withheld by Defendant;

c.      Awarding Statutory damages to Plaintiff and Class Members under the FCCPA;

d.      Awarding Plaintiff(s) their costs and attorneys' fees action pursuant to *Fla. Stat. §§ 83.48*, the Lease Agreement, the FCCPA, and FRLTA; and

e.      Awarding such other and further relief as the Court may deem just and proper.

Dated: May 6, 2024                          **VARNELL & WARWICK, P.A.**

/s/ Jeffrey L. Newsome
Brian W. Warwick; FBN: 0605573
Janet R. Varnell; FBN: 0071072
Pamela G. Levinson, FBN: 538345
Jeffrey L. Newsome; FBN: 1018667
Christopher J. Brochu; FBN: 1013897
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*bwarwick@vandwlaw.com*
*jvarnell@vandwlaw.com*
*plevinson@vandwlaw.com*
*jnewsome@vandwlaw.com*
*cbrochu@vandwlaw.com*
*ckoerner@vandwlaw.com*
*mjett@vandwlaw.com*

***Attorneys for Plaintiffs, and on behalf of all
others similarly situated***